IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| CHARLES WEINACKER, | : | |
| Plaintiff, | : | |
| vs. | : | CA 22-0028-TFM-MU |
| PETFRIENDLY, INC., *et al.*, | : | |
| Defendants. | : | |

## **REPORT AND RECOMMENDATION**

This cause is before the undersigned Magistrate Judge for issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1) and S.D. Ala. GenLR 72(a)(2)(S), on Defendants' Motion to Dismiss (Doc. 31), Plaintiff's response in opposition (Doc. 33), and the movants' reply (Doc. 34). Based on the contents of these pleadings and for the reasons set forth below, the Magistrate Judge **RECOMMENDS** that Defendants' motion be **GRANTED**, in part, and **DENIED**, in part, as set out below.

This is a trademark infringement action, and Plaintiff Charles Weinacker's second attempt to overcome dismissal at the pleading stage. Previously, on June 1, 2022, the undersigned entered a Report and Recommendation (R&R) informing Plaintiff that his Amended Complaint (Doc. 14) was a "shotgun" pleading, lacking sufficiency to proceed beyond the pleading stage into discovery. (*See* Doc. 20, *adopted in part,* at Doc. 27). Plaintiff was instructed in the R&R of the essential elements of each claim and his requirement to plead facts sufficient to put Defendants on notice of the claims alleged against them. In attempt to cure the deficiencies laid out

1

in the R&R, Plaintiff has now filed a Second Amended Complaint alleging eight (8) claims against Petfriendly, Inc., Pet Friendly Direct, and www.petfriendlydirct.com (a/k/a www.petfriendlybox.com) (collectively, "Defendants") arising out of Defendants' purported misappropriation and use of Plaintiff's "PET FRIENDLY" Mark. (Doc. 28).

Defendants have, again, filed a motion to dismiss asserting: (1) Plaintiff's failure to separate out and make his allegations clear, including which Defendants did what; (2) Plaintiff's failure to allege facts supporting this Court's personal jurisdiction; (3) Plaintiff's failure to plead claims of infringement under 15 U.S.C. § 1441(1); (4) Plaintiff's failure to plead sufficient facts for claim of copyright infringement; and (5) Plaintiff's failure to plead sufficient facts for claims of common law trademark infringement, trademark dilution, contributory trademark infringement, unjust enrichment, and reputational damage. (*See* Docs. 31, 34).

This motion is ripe for consideration, and the Court hereby incorporates the required pleading standard and elements of each claim which were thoroughly laid out and discussed at length in this Court's June 1, 2022 Report and Recommendation. (*See* Doc. 20).

## **Discussion**

In determining the sufficiency of a complaint, a court must take three steps: (1) he court must take note of the elements a plaintiff must plead to state a claim; (2) the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. *Malleus v. George,* 641 F.3d 560,

563 (3d Cir. 2011). While courts in the Eleventh Circuit generally afford the pleadings of *pro se* litigants liberal construction, those pleadings must nonetheless conform to procedural rules, *Albra v. Advan, Inc.,* 490 F.3d 826, 829 (11th Cir. 2007), and courts may not act as *de facto* counsel for a *pro se* plaintiff and rewrite a deficient pleading. *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds as recognized in Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010) ("[E]ven in the case of *pro se* litigants this leniency does not give a court license to serve as *de facto* counsel for a party. . . or to rewrite an otherwise deficient pleading in order to sustain an action.").

Under this liberal standard, the undersigned finds Plaintiff has meagerly carried his burden of establishing this Court's personal jurisdiction over the Defendants, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992), with his allegations that through Defendants' website(s), Defendants have marketed, distributed, offered for sale, and/or sold the infringing products to persons within the State of Alabama, that Defendants regularly transact and conduct business within the State of Alabama, and/or that Defendants have made or established contacts within the State of Alabama. (Docs. 28 at 3-6; 33 at 4-5). Alabama's long-arm provision permits its courts to exercise personal jurisdiction to the full extent permitted by the Due Process Clause of the Fourteenth Amendment. *See Mutual Service Ins. Co. v. Frit Industries, Inc.,* 358 F.3d 1312, 1319 (11th Cir.2004) ("Alabama's long-arm statute authorizes Alabama courts to assert jurisdiction to the fullest extent constitutionally permissible," such that the sole issue is whether exercise of jurisdiction would violate due process). Due process authorizes the exercise of personal jurisdiction when "(1) the nonresident defendant has purposefully

established minimum contacts with the forum;" and "(2) the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice." *Francosteel Corp., Unimetal–Normandy v. M/V Charm, Tiki, Mortensen & Lange,* 19 F.3d 624, 627 (11th Cir. 1994). Notably, Plaintiff has provided no actual evidence of sales to Alabama; however, Defendants have yet to deny such alleged sales and/or contacts in Alabama. *Future Technology Today, Inc. v. OSF Healthcare Systems,* 218 F.3d 1247, 1249 (11th Cir. 2000) (Plaintiff bears the initial burden of alleging personal jurisdiction, then the burden shifts to the defendant to make a prima facie evidentiary showing, by affidavits or otherwise that jurisdiction does not exist.). Furthermore, review of Petfriendlybox.com reveals that the site sells "pet wellness" products for dogs and cats and ships products to door fronts across the country.[1] This act of seeking business across the nation, including in the State of Alabama, arguably reflects purposeful activity directed toward the forum State, such that Defendants should reasonably anticipate being brought into court in Alabama. *See Asahi Metal Indus. Co. v. Superior Court of California,* 480 U.S. 102, 112 (1987). For these reasons, personal jurisdiction is established.

Additionally, though not the model of clarity, Plaintiff's complaint does put Defendants on notice of the claims against them. *Marsh v. Butler Cnty,* 212 F.3d 1318, 1321 (11th Cir. 2000) (The complaint must simply "give the defendant fair notice of what the Plaintiff's claim is and the grounds upon which it rests."). Plaintiff has identified the

---

[1] *See* About Petfriendly, https://petfriendlybox.com/about (last visited March 24, 2023). The Court takes judicial notice of Petfriendly website as referenced in Plaintiff's complaint and response. Docs. 28 at 3; 33 at 4-5; *see also* Fed. R. Evid. 201 (Allows a court to take judicial notice of a fact which "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.")

"PET FRIENDLY" mark subject of the suit and has indicated that Defendants are using the mark in question to sell "a variety of products" through a specific, articulated website. (*See* Doc. 28 at 2). As asserted by Defendants, Plaintiff fails to specifically describe what these "infringing products" are; however, Plaintiff maintains that for over three decades he has manufactured, advertised, marketed, promoted, distributed and sold "pet products" bearing the PET FRIENDLY Mark. (Doc. 28 at 2, 4). Plaintiff alleges the parties "are in the same industry." *Id*. Notably, as previously discussed, Defendants' website(s) indicates they too sell pet products. (*See, supra,* n.1). As to which Defendant is liable for the alleged actions, Plaintiff has demonstrated the Defendants share legal connections which are indistinguishable at the pleading stage, and the Court agrees. (Docs. 28 at 3; 33 at 4). The Court, after reviewing the complaint, finds that the allegations are not so vague or ambiguous that Defendants cannot frame a responsive pleading. Accordingly, Plaintiff's complaint cannot be viewed as a shotgun pleading.

The Court turns now to Plaintiff's claims.

1. **<u>Claim 1 -- Federal Trademark Infringement</u>**

Plaintiff alleges Defendants are utilizing a mark "confusingly similar to PET FRIENDLY's *registered marks* in violation of the Lanham Act, codified at 15 U.S.C. § 1051 et seq." (Doc. 28 at 6) (emphasis added). Admittedly, however, Plaintiff's formally registered PET FRIENDLY mark was not renewed and is considered abandoned by the United States Patent and Trademark Office. (*See Id*. at 5, 6). While Plaintiff may own a valid common law mark and not have it registered, it is similarly true that a past registration that has lapsed or was not renewed is not a valid registered mark. Because Plaintiff has no valid, registered mark, it is **RECOMMENDED** that to the extent Claim 1

is an attempt to sue under 15 U.S.C. § 1114(1), such claim be dismissed.  It is further **RECOMMENDED** that any claims for infringement of a *registered* mark be dismissed with prejudice.

However, "even if a trademark is not federally registered, it may still be enforceable under § 43(a) of the Lanham Act, codified at 15 U.S.C. § 1125(a), which creates a federal cause of action for trademark infringement." *Matal v. Tam*, 582 U.S. 218, 225 (2017).  Plaintiff has made only general allegations of violations of the Lanham Act, thus including claims pursuant to § 1125.  Importantly, the protections of § 1125(a) apply to "qualifying" unregistered trademarks, *Two Pesos, Inc., v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992).  To pursue a claim for an unregistered mark, a plaintiff first bears the burden of showing his own right to use the mark in question, *ITC Ltd. V. Punchgini, Inc.*, 482 F.3d 135, 154 (2d Cir. 2007), that is, that he "made the first use of the mark to identify his goods or service and continues to use the mark commercially." *Id*. at 147.  Next, a plaintiff must demonstrate that he has a valid trademark entitled to protection, and the defendant's use of a similar mark is likely to cause confusion among consumers. *Malletier v. Dooney & Bourke, Inc.,* 454 F.3d 108, 115 (2d Cir.2006).

"With respect to ownership of an unregistered mark, the first party to adopt a mark can assert ownership so long as it continuously uses the mark in commerce." *Com. Nat'l Ins. Servs., Inc. v. Com. Ins. Agency, Inc.*, 214 F.3d 432, 438 (3d Cir. 2000) (citation omitted).  Plaintiff alleges he created the mark, PET FRIENDLY, by being the first to use the word combination, the first to place the mark on pet products sold in the United States and worldwide, and that he did this as early as 1994. (Doc. 28 at 4, 7).

Plaintiff asserts he has used the "PET FRIENDLY Mark and Name continuously in interstate commerce prior to any date which can be legally claimed by [Defendants]." (*Id*. at 6).  Thus, the undersigned finds that these statements are enough to plead that Plaintiff was the first to adopt the mark and continuously use the mark in commerce.

"[T]he owner of an unregistered mark has the burden of proving the existence of a protectable mark." *Parks LLC v. Tyson Foods, Inc.*, 863 F.3d 220, 226 (3d Cir. 2017) (internal alterations omitted).  To show that the mark is protectable, Plaintiff must demonstrate that the mark is "sufficiently distinctive to distinguish the registrant's goods from those of others." *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 116 (2d Cir. 2006) (citation and internal quotation marks omitted). "The degree to which a mark is entitled to protection under the Act depends on whether the mark is classified as (a) generic, (b) descriptive, (c) suggestive, or (d) fanciful or arbitrary." *Estee Lauder v. Gap, Inc.,* 108 F.3d 1503, 1508 (2d Cir. 1997) (citation omitted). "The latter three categories are inherently distinctive, whereas generic marks cannot be distinctive and descriptive marks are distinctive only if they have acquired 'secondary meaning." *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 451 (5th Cir. 2017) (internal quotation and citation omitted).  Plaintiff alleges in his complaint that he previously registered the PET FRIENDLY mark with the United States Patent and Trademark Office ("USPTO") on three occasions - Reg. No. 2526388 on June 8, 2002, Reg. No. 2991051 on September 5, 2005, and Reg. No. 2991052 on September 6, 2005. (Doc. 28 at 4-5).  The undersigned finds this sufficient to show that the mark is eligible for protection.

Finally, Plaintiff must show that Defendants' use of the mark has caused

confusion. *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc*., 783 F.3d 527, 536 (11th Cir. 2015). "[L]ikelihood of confusion occurs when a later user uses a trade-name in a manner which is likely to cause confusion among ordinarily prudent purchasers or prospective purchasers as to the source of the product." *Wreal, LLC v. Amazon.com, Inc.,* 38 F.4th 114, 126 (11th Cir. 2022) (quotation marks and citation omitted). The complaint alleges "that customers who purchase [Defendants'] products are trying to return and/or cancel their orders by visiting Plaintiff's website not petfriendlydirect.com aka petfriendlybox.com website(s)," and Plaintiff has attached copies of such emails to his complaint. Docs. 28 at 5-6; 30. Also, Plaintiff has reproduced a copy of his "PET FRIENDLY" mark alongside Defendants' "petfriendly" mark for comparison. (*Id*. at 2). With this support, the undersigned finds Plaintiff's allegations are enough to show a likelihood of confusion at the pleading stage.

Under the less stringent standard for *pro se* litigants, the undersigned finds Plaintiff has pled enough under 15 U.S.C. § 1125(a), at this stage, to survive dismissal.

2. **Claim 2 -- Common Law Trademark Infringement Claims**

In Claim 2, Plaintiff alleges common law trademark infringement. The elements needed to make a claim of common law trademark infringement are essentially the same as previously discussed for an unregistered trademark under § 1125(a) of the Lanham Act. *See Investacorp, Inc. v. Arabian Inv. Banking Corp. (Investcorp) E.C*., 931 F.2d 1519, 1521 (11th Cir. 1991) (explaining analysis for common law trademark infringement claims is the same as the analysis for the claims under federal law).

Accordingly, for the reasons previously stated, Plaintiff has pled enough at this time to pursue a claim of common law trademark infringement against Defendants.

3. **Claim 3 -- Trademark Dilution**

Plaintiff, in attempting to assert a Trademark Dilution claim, avers:

> For decades, Plaintiff has exclusively and continuously promoted and used the PET FRIENDLY Mark, both in the United States and throughout the world. The PET FRIENDLY Mark has become a well-known symbol of PET FRIENDLY and PET FRIENDLY's products well before Petfriendly, Inc. and/Direct began using the Infringing Mark" and that Defendants are using the mark and diluting the distinctiveness of the mark "by eroding the public's exclusive identification of this mark with PET FRIENDLY, tarnishing and degrading the positive associations and prestigious connotations of the PET FRIENDLY Mark, and otherwise lessening the capacity of the PET FRIENDLY Mark to identify and distinguish Plaintiff's goods.

(Doc. 28 at 7). In opposition to this motion, Plaintiff avers "long-term and widespread use of the PET FRIENDLY Mark in the United States via Internet, television, public appearances and print as well as unsolicited media coverage (i.e. Weather Channel ®) the PET FRIENDLY Mark enjoys a degree of consumer recognition and has become well-known in the pet industry." (Doc. 33 at 15). He further contends he has been harmed by Defendants' usage of the mark because the mark is being "associated with Defendants' products that are 'not working'." (*Id*.). These conclusory allegations, however, are insufficient to discern whether Plaintiff's mark is "widely recognized by the general consuming public of the United States," as "fame is the key ingredient in a trademark dilution claim." *Adidas Am., Inc. v. Thom Browne Inc.*, 599 F. Supp. 3d 151, 161 (S.D.N.Y. 2022) (quoting *DigitAlb, Sh.a v. Setplex, LLC*, 284 F. Supp. 3d 547, 557 (S.D.N.Y. 2018)).

Plaintiff was previously instructed, *see* doc. 20 at 22-24, as to the elements of pleading a claim for dilution, including the necessity of alleging facts demonstrating "the type of advertising and publicity surrounding his marks (including the duration, extent,

9

and geographic reach of that advertising and publicity), the amount, volume, and geographic extent of sales of goods and services offered under those marks, or the extent of recognition of the marks", as well as the other elements of the claim. *See* 15 U.S.C. § 1125(c)(2)(A)(i)-(iv). It is arguable as to whether Plaintiff has met this burden. His allegations continue to lack specific details establishing public recognition of the PET FRIENDLY mark among consumers, but he does plead allegations pointing to the possibility that his mark may be widely recognized by the general public. At this early stage of the case, and given the leniency afforded to *pro se* plaintiffs, the Court finds that Plaintiff's general averment that he has marketed and sold pet products under his mark worldwide, for decades across a variety of media, crosses the threshold to proceed. Notably, as this case progresses, Plaintiff will need to prove facts showing his mark is famous to be successful on his claim of dilution. Accordingly, it is **RECOMMENDED** this claim be allowed to proceed, at this time.

4. <u>**Claim 4—Contributory Trademark Infringement**</u>.

Plaintiff was previously instructed by this Court that to establish contributory trademark infringement, he must allege facts showing Defendants intentionally induced a direct infringer to commit infringement, or otherwise engaged in acts of contribution after acquiring actual or constructive knowledge of the purported infringement. *See* Doc. 20 at 24-24; *see also*, *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,* 456 U.S. 844, 850, 1982) (A contributory infringement claim requires, at a minimum, both an allegation of a direct infringement by a third party, and an allegation of an intentional or knowing contribution to that infringement by the defendant.). Plaintiff has failed to establish such in his second amended complaint.

In his second amended complaint, Plaintiff asserts, "Petfriendly, Inc. and/or Direct intentionally induced others, including petfriendlydirect.com aka petfriendlybox.com, to infringe and use the PET FRIENDLY Mark" (Doc. 28 at 8); while specifically claiming that Defendants, who are all one-in-the-same, "own [the website that] is selling infringing products which have the PET FRIENDLY Mark." (Doc. 33 at 14). This allegation, while substantially lacking sufficient detail to establish contributory infringement, is contradictory to Plaintiff's claim that Defendants are all one-in-the-same. Plaintiff's entire complaint is premised on Defendants being the same entity, asserting: "Defendants have different names but are the same except one is a LLC and the other is a corporation," by all appearances Defendants are the same," and "Defendants own the website . . . which infringes on Weinacker's Marks." (Doc. 33 at 14). Accordingly, Plaintiff's allegations against Defendants here are claims of direct infringement, not contributory infringement, as contributory infringement is not an option for liability where no other party has been named with which Defendants could have induced or encouraged infringement.

By Plaintiff's own assertions, Defendants are the maker and supplier of the products bearing Plaintiff's mark and Defendants own the website which distributes the infringing products. This relationship is akin to the reasoning of "[t]he intracorporate conspiracy doctrine[, which] holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy. Simply put, under the doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031,

11

1036 (11th Cir. 2000). Similarly, Defendants cannot be liable for both direct infringement and contributory infringement within their same company. Indeed, the facts underlying Plaintiff's claim here are in stark contrast to the types of cases where contributory trademark liability has been found or litigated. *See, e.g., Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844 (1982); *Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93 (2d Cir. 2010).

Assuming for the sake of argument that petfriendlydirect.com aka petfriendlybox.com is an entity separate and distinct from Defendants, Plaintiff has utterly failed to articulate facts describing the knowledge the website had and what infringement activities the website engaged in to establish contributory infringement liability. Thus, his claim still fails.

It is therefore **RECOMMENDED** that this claim be dismissed with prejudice.

### 5. Claim 5—Reputational Damage

Plaintiff claims that Defendants' use of the PET FRIENDLY mark has "caused a likelihood of harm to Plaintiff's business reputation" and "is causing irreparable harm to the goodwill symbolized by the mark and the reputation for quality that it embodies" in violation of § 1125(c).

Relief pursuant to 15 U.S.C § 1125(c) requires the claimant to establish a distinctively famous mark. As discussed previously, it is arguable as to whether Plaintiff has or can establish that his mark enjoys widespread recognition as to be considered famous for purposes of trademark violation(s). *See, supra,* at pp. 9-10. While the claim as pled, utterly lacks factual details, *see Beckwith v. Bellsouth Telecommunications Inc.*, 146 F. App'x 368, 372 (11th Cir. 2005) (Dismissal affirmed

due to "[t]he failure to identify claims with sufficient clarity to enable the defendant to frame a responsive."), it is inevitably intertwined with claims of trademark dilution and potential loss of good will associated with trademark violations. *See Hard Candy, LLC v. Anastasia Beverly Hills, Inc.,* 921 F.3d 1343, 1353 (11th Cir. 2019) (recognizing reputational damage and loss of good will as recoverable actual business damages available to a Lanham Act plaintiff). For this reason, the most practical conclusion at this early stage of the suit is to allow Plaintiff's claim for reputational damage to proceed with his unregistered trademark claims.

**6. Claim 6—Copyright Infringement**

Plaintiff claims he possesses exclusive rights under the Copyright Act of 1976, 17 U.S.C. § 101 *eq. seq.*, to the PET FRIENDLY copyright, alleging, in pertinent part that:

> For each of the works at issue in this matter, Plaintiff either holds a copyright certificate from the United States Copyright Officer or has applied for a registration certificate.
>
> Petfriendly, Inc. and/or Direct has misappropriated, copied, distributed, created derivative works of, emulated, and publicly displayed the PET FRIENDLY Copyrights, and made commercial use of, material that infringes the PET FRIENDLY Copyrights.

(Doc. 28 at 9).

To prevail on a copyright infringement claim, Plaintiff bears the burden of showing (1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original. *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 361 (1991). While Plaintiff is correct that an author gains "exclusive rights" in his work immediately upon the work's creation, *see* § 106, "[b]efore pursuing an infringement claim in court, however, a copyright claimant generally must comply with § 411(a)'s requirement that "registration of the copyright claim has been made." § 411(a).

*Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 887 (2019). "Therefore, although an owner's rights exist apart from registration, *see* § 408(a), registration is akin to an administrative exhaustion requirement that the owner must satisfy before suing to enforce ownership rights." *Id*. It is only after Plaintiff has established these two elements that the burden then shifts to Defendants "to demonstrate the work in which copyright is claimed is unprotectable (for lack of originality) or, more specifically, to prove that . . . the copyrighted work actually taken is unworthy of copyright protection." *Montgomery v. Noga*, 168 F.3d 1282, 1289 (11th Cir. 1999) (internal quotation marks omitted).

Here, Plaintiff has produced no certificate, no registration number, no date of registration, and no title submitted to be registered. But, most detrimental to his claim, Plaintiff fails to identify the copyrighted material – indeed, no pleading provides a description of the material, artwork, and/or creative work allegedly authored. Thus, the pleading is void of a single registered copyright that forms the basis of the claim. 17 U.S.C. § 411(a) ("[N]o civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."). Stated another way, Plaintiff has failed to identify what creative work was copyrighted and infringed upon. Reading the pleadings in a light most favorable to Plaintiff, the undersigned notes that Plaintiff does allege that he was the first to put the words "PET" and "FRIENDLY" together, creating PET FRIENDLY. (S*ee* Doc. 28 at 4). To the extent that this is the copyrighted work allegedly infringed upon, words and short phrases such as names, titles, and slogans (as well as typeface as typeface) are examples of work

*not subject* to copyright. *See* 20 C.F.R. § 202.1(a) & (e). Accordingly, without the identification of a registered creative and published work, of which Plaintiff can give a complete description, the undersigned **RECOMMENDS** that Plaintiff's Claim 6 be dismissed without prejudice.

### 7. Claim 7 – False Designation and Unfair Competition

Plaintiff alleges PetFriendly, Inc. and Pet Friendly Direct are "unfairly benefiting from and misappropriating Plaintiff's goodwill and reputation, as well as the reputation of the PET FRIENDLY Trademark" by their "unauthorized use of the PET FRIENDLY Trademark." (Doc. 28 at 10). Plaintiff further alleges Defendants' use of the PET FRIENDLY trademark has caused and will continue to cause a likelihood of confusion and deception of members of the trade and public, and additionally, injury to PET FRIENDLY's goodwill and reputation as symbolized by the PET FRIENDLY Mark." *Id*. For these reasons, Plaintiff is suing Defendants pursuant to § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

"The law of unfair competition has its roots in the common-law tort of deceit: its general concern is with protecting *consumers* from confusion as to source." *Bonito Boats v. Thunder Craft Boats,* 489 U.S. 141, 157 (1989) (emphasis in original). To prevail on a federal claim of unfair competition or false designation of origin requires essentially the same elements as demonstrating trademark infringement: a trademark owner "must show (1) that it had trademark rights in the mark or name at issue and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1346 (11th Cir. 2012)

(citation omitted); see *Custom Mtg. & Eng'g. Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647-48 (11th Cir. 2007) (explaining the same elements for false designation). At this time, because it was determined that Plaintiff has meagerly pleaded sufficient facts as to his § 1125 trademark infringement claim to survive this motion to dismiss (discussed, *supra*, at section 1), and with the leniency afforded to *pro se* plaintiffs, the undersigned finds this cause of action should be carried along with his 15 U.S.C. § 1125(a) trademark infringement claim. *See Chanel, Inc. v, Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1475 n.3 (11th Cir. 1991) (noting same facts support trademark infringement and unfair competition).

8. **<u>Claim 8 —Unjust Enrichment</u>**.

   Plaintiff's last claim is for unjust enrichment. This Court previously laid out the elements needed to prevail on such claim, and further guided Plaintiff that he must describe the money which belongs to him (and is being improperly held by Defendant, or Defendants) *or* describe the money held by Defendant(s) that was improperly paid to Defendant(s) because of mistake or fraud, noting that such claims required pleading with particularity. (*See* Doc. 20 at 32-34). In his second amended complaint, Plaintiff alleges that Defendants have "knowingly benefited at the expense of Plaintiff," in particular "from the time, effort, and money Plaintiff has invested into developing the goodwill associated with the PET FRIENDLY Mark." (Doc. 28 at 10-11). He adds in opposition to this motion that the alleged enrichment complained of is tied to investments Defendants received from third parties. (Doc. 33 at 16). Accordingly, Plaintiff has failed to allege facts indicating Defendants hold or have possession of money which belongs to him. *RREF RB-AL SLDL, LLC v. Saxon Land Development*,

968 F.Supp.2d 1133, 1141 (M.D. Ala. 2013) ("A defendant cannot be unjustly enriched if it does not have in its possession any money belonging to the plaintiff."). Plaintiff's allegations here are merely a continuation of his trademark infringement claim, and he may "pursue damages under the Lanham Act in the form of Defendants' profits under a theory of unjust enrichment." *See Babbit Elecs., Inc. v. Dynascan Corp.,* 38 F.3d 1161, 1182 (11th Cir. 1994) (applying the theory of unjust enrichment in connection with trademark infringement claims in determining the plaintiff's recovery under the Lanham Act).

If is therefore **RECOMMENDED** that Claim 8 be dismissed without prejudice.

## CONCLUSION

Based upon the foregoing, it is **RECOMMENDED** that Defendants' motion to dismiss Plaintiff's second amended complaint (Doc. 31) be **GRANTED,** in part and **DENIED,** in part. As to the specific claims Plaintiff Weinacker attempts to assert in his second amended complaint, the undersigned **RECOMMENDS:**

The **DISMISSAL with prejudice**, of:

1. Claim 1, as to any trademark infringement claim brought pursuant to 15 U.S.C. § 1114(a) and as to any claim related to the existence of a "registered" trademark.

2. Claim 4 (contributory trademark infringement).

The **DISMISSAL without prejudice** of:

1. Claim 6 (copyright infringement), and

2. Claim 8 (unjust enrichment)

Furthermore, it is **RECOMMENDED** that only the following claims remain in this action:

1. Claim 1, as to claims brought pursuant to 15 U.S.C. § 1125(a),

2. Claim 2 (common law trademark infringement),
3. Claim 3 (dilution),
4. Claim 5 (reputational damage), and
5. Claim 7 (false designation and unfair competition).

## **NOTICE OF RIGHT TO FILE OBJECTIONS**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D.ALA. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the **2nd** day of **May**, **2023**.

s/P. Bradley Murray
**UNITED STATES MAGISTRATE JUDGE**